UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


THOMAS R. BURDETTE, JR.,

     Plaintiff

v.                            CIVIL ACTION NO. 2:05-0262

JOHN E. POTTER,
Postmaster General
United States Postal Service,

     Defendant


## MEMORANDUM OPINION AND ORDER


       Pending are defendant's motions (1) to dismiss or, in the alternative, for summary judgment, filed August 9, 2005,[1] (2) to exceed the page limitation for his reply memorandum, filed October 12, 2005, (3) to strike plaintiff's memorandum in opposition to defendant's motion to exceed the page limitation, filed November 3, 2005, and (4) for leave to file an amended answer, filed December 7, 2005.

       Inasmuch as defendant has demonstrated good cause, the court ORDERS that the motions to exceed the page limitation and

---

[1]In view of certain extensions granted to both parties, and briefing filed beyond defendant's reply, the dispositive motion did not ripen until the submission of defendant's motion to strike filed November 21, 2005.

to amend his answer be, and they hereby are, granted.  Regarding
the motion to strike, defendant contends the challenged
memorandum in opposition is, in fact, an unauthorized surreply.
Nevertheless, the court will entertain the filing.  The court,
accordingly, ORDERS that the motion to strike be, and it hereby
is, denied.


                              I.


          Plaintiff Thomas R. Burdette, Jr., is a West Virginia
resident.  (Compl. ¶ 1).  Defendant John E. Potter is the
Postmaster General of the United States Postal Service ("postal
service").  (Id. ¶ 2).  Burdette was formerly employed by the
postal service as a letter carrier.  (Id. ¶ 6.)

          In June 2003, Burdette's father, already disabled at
the time, was stricken with a further, serious illness.  (Id. ¶
10).  Burdette, the primary care provider for his father, was
permitted to absent himself from work under the Family Medical
Leave Act ("FMLA"), 29 U.S.C. §§ 2601-54.  (Id. ¶ 12).  Burdette
continued to care for his father until the USPS informed him on
September 8, 2003, that he had exhausted his FMLA leave.  (Id. ¶
13).  The father still required care, however, forcing Burdette

                              2

to phone the USPS each work day and request "Leave Without Pay" ("LWP status") under the governing workplace regulations.  (<u>Id.</u> ¶ 14).

On October 6, 2003, while still on LWP status, Burdette fell and fractured his ankle.  (<u>Id.</u> ¶ 15).  When he notified USPS of the incident, he was subjected to derogatory comments for missing work.  (<u>Id.</u> ¶ 16).

On October 8, 2003, Burdette attempted to contact James E. Vance, an Employee Assistance Program ("EAP") counselor, concerning his perceived mistreatment.  (<u>Id.</u> ¶ 17).  On October 9, 2003, Burdette spoke with Vance and additionally informed him he was depressed about his father's condition and worried the USPS would take adverse action against him.  (<u>Id.</u> ¶ 19).  On October 22, 2003, Vance informed Burdette the USPS was aware of the situation but remained concerned about his absences.  (<u>Id.</u> ¶ 21).  Burdette's father passed away two days later.  (<u>Id.</u> ¶ 22).

Burdette remained on LWP status, although his physician released him to work on a light duty basis in early December 2003.  (<u>Id.</u> ¶ 24).  The USPS refused Burdette's request for light duty work at that time though, informing Burdette he needed to be cleared by the postal nurse and then return to work full time.

3

(<u>Id.</u> ¶ 25.)  Burdette was cleared by his doctor and the nurse, without restrictions, and returned as a full time letter carrier on December 24, 2003.  (<u>Id.</u> ¶ 27).

On January 6, 2004, Burdette was disciplined with a "No-Time Off Suspension" as a result of his perceived excessive time on LWP status from September 9 through December 23, 2003. (<u>Id.</u> ¶ 28).  Burdette continued to work full time as a letter carrier until May 3-4, 2004.  (<u>Id.</u> ¶ 32).  During these two days, he suffered a major, disabling mental breakdown.  (<u>Id.</u>) Burdette's wife notified his station manager, Paul Payne, about the incident, along with Burdette's inability to report to work. (<u>Id.</u> ¶ 33).  Burdette used his remaining sick leave during this time and then re-entered LWP status.  (<u>Id.</u> ¶ 34.)

On May 10, 2004, Burdette contacted Vance, informing him of his mental breakdown and requesting assistance.  (<u>Id.</u> ¶ 35).  Vance concluded that Burdette was suffering from mixed anxiety and depressed mood and referred him to psychiatrist Lawrence B. Kelly, MD, for further treatment and evaluation. (<u>Id.</u>)  On May 12, 2004, Dr. Kelly examined Burdette and diagnosed him with major depressive disorder with anxiety and panic attack. (<u>Id.</u> ¶ 37).  Dr. Kelly prescribed additional medications for Burdette at that time.  (<u>Id.</u>)

4

On May 18, 2004, Burdette wrote James E. Adkins, Jr., postmaster at the Charleston post office, to request 160 hours of advanced sick leave. (Id. ¶ 38).  Further, on May 25, 2004, after numerous attempts, Burdette informed Payne of his disabling condition and mentioned his advanced sick leave request.  (Id. ¶ 39).  Payne responded that he wanted Burdette to put in regular workdays to minimize resentment among fellow employees.  (Id.)

On May 26, 2004, Dr. Kelly confirmed his previous diagnosis and certified Burdette was incapacitated and unable to work as a result of a mental disability.  (Id. ¶ 40).  The same day, Burdette submitted an FMLA request, with Dr. Kelly's certification attached, to Timothy Toms, an FMLA coordinator with USPS.  (Id. ¶ 41).  On May 28, 2004, the FMLA request was denied. (Id. ¶ 42).  On June 1, 2004, Adkins denied the request for advanced sick leave based upon Burdette's 2004 attendance record. (Id. ¶ 43).  Burdette contends that throughout the period from May through July 7, 2004, he requested reasonable accommodations that were explicitly, or effectively, denied by virtue of the USPS' failure to engage in the interactive process.  (Id. ¶ 44, 46).

Burdette contends that repeated threats and pressure
resulted in his July 8, 2004, resignation.  (Id. ¶¶ 47-48, 50).
Burdette appears to contend that during the relevant time period
"his mental impairment interfered with his judgment and ability
to understand and exercise his legal rights . . . ."  (Id. ¶ 51).
The next day, Dr. Kelly further diagnosed Burdette as suffering
from bi-polar disorder.  (Id. ¶ 53).  On July 13, 2004, Burdette
began counseling with Linda O. Workman, a licensed psychologist.
(Id. ¶ 54).

On September 13, 2004, Burdette's condition had
improved.  (Id. ¶ 55).  He phoned Vance and advised of his desire
to return to work at the USPS.  (Id.)  On September 16, 2004,
Burdette made the same request to Adkins in writing.  (Id. ¶ 56).
Burdette advised Adkins that he believed he was forced to resign
and, in any event, he was not of sound mind when he left the
USPS' employ. (Id. ¶ 56).

On September 24, 2004, Burdette initiated the EEO
process by seeking counseling.  (Def.'s Memo. in Supp. at 3).  On
October 8, 2004, Adkins responded to Burdette, informing him of
the necessity of filing an application for reinstatement through
the district personnel office.  (Compl. ¶ 58).  Adkins further
advised Burdette that his claim of a disability was unfounded.

6

(Id.)  Burdette filed the application with the district personnel office but received no response.  (Id. ¶ 58).

On December 8, 2004, Burdette filed a formal EEO complaint alleging disability discrimination.  (Def.'s Memo. in Supp. at 3).  On December 28, 2004, a final agency decision dismissed the EEO complaint as untimely.  (Id.)  On March 30, 2005, Burdette instituted this action.  (Id. at 1).  His five-count complaint alleges (1) two disparate-treatment counts of disability discrimination under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-97, (2) an additional Rehabilitation Act claim for failure to reasonably accommodate his disability, (3) unlawful retaliation for exercise of his rights under the FMLA, and (4) constructive discharge under both the Rehabilitation Act and the FMLA.  (Compl. ¶¶ 76-96).

On August 9, 2005, defendant moved to dismiss. Defendant contends Burdette's "claims under the Rehabilitation Act are time-barred because he failed to initiate contact with an EEO counselor within 45 days of the alleged discriminatory act(s)--the alleged constructive discharge and/or the alleged failure to accommodate -- as provided in 29 C.F.R. § 1614.105(a)(1)."  (Def.'s Memo. of Law at 1-2).

7

II.


A.   Governing Standard


        Federal Rule of Civil Procedure 12(b) provides

pertinently as follows:

>   If, on a motion asserting the defense numbered (6) to
>   dismiss for failure of the pleading to state a claim
>   upon which relief can be granted, matters outside the
>   pleading are presented to and not excluded by the
>   court, the motion shall be treated as one for summary
>   judgment and disposed of as provided in Rule 56, and
>   all parties shall be given reasonable opportunity to
>   present all material made pertinent to such a motion by
>   Rule 56.

Fed. R. Civ. P. 12(b).  Both parties have attached a number of

documents to their filings and suggest the pending dispositive

motion may properly be converted to one seeking summary judgment.

(See Pl.'s Memo. in Oppos. at 1; Def.'s Memo. of Law at 1, 4-5).

The court, accordingly, converts the motion pursuant to Rule

12(b).


        A party is entitled to summary judgment "if the

pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  Id.  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); Id. at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate

9

factual conclusions to be drawn are in dispute.  <u>Overstreet v.</u>

<u>Kentucky Cent. Life Ins. Co.</u>, 950 F.2d 931, 937 (4th Cir. 1991).

        A court must neither resolve disputed facts nor weigh

the evidence, <u>Russell v. Microdyne Corp.</u>, 65 F.3d 1229, 1239 (4th

Cir. 1995), nor make determinations of credibility.  <u>Sosebee v.</u>

<u>Murphy</u>, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party

opposing the motion is entitled to have his or her version of the

facts accepted as true and, moreover, to have all internal

conflicts resolved in his or her favor.  <u>Charbonnages de France</u>

<u>v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are

"drawn from the underlying facts   . . . must be viewed in the

light most favorable to the party opposing the motion."  <u>United</u>

<u>States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).


B.   Analysis


        The Rehabilitation Act expressly incorporates the

standards of the Americans with Disabilities Act ("ADA"), 42

U.S.C. §§ 12101-213.  29 U.S.C. § 794(d).  The ADA, in turn,

adopts the "powers, remedies and procedures" set forth in Title

VII.  <u>See</u> 42 U.S.C. § 12117(a).  The governing regulation relied

upon by the defendant provides as follows:

        (a) Aggrieved persons who believe they have been
        discriminated against on the basis of . . . handicap
        must consult a Counselor prior to filing a complaint in

10

order to try to informally resolve the matter.

> **(1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.**
>
> **(2) The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.**

29 C.F.R. § 1614.105(a).

The parties presently dispute a variety of matters. For example, defendant contends an EEO poster containing the 45 day deadline was posted in Burdette's workplace and that Burdette had been trained twice on the 45 day limitation. Burdette does not concede the poster was displayed. He further responds (1) that he was not otherwise aware of the 45 day requirement, and (2) that "any such poster would not satisfy the regulatory notice requirements." (Compl. ¶¶ 65-66). He notes additionally that he "was not in the facility after his breakdown when his request for accommodations were denied, so that he was not able to apprise himself of any posted notice . . . ." (Pl.'s Memo. in Oppos. at 19-20).

11

Apart from the notice issue, however, the parties disagree as to whether Burdette's mental condition was sufficient to warrant excusing the 45 day deadline.  Burdette also avers as follows:

> Given the impairments resulting from my disability at the time, all of which substantially effected [sic] one or more of my major life activities, as well as given my repeated requests for reasonable accommodations, I feel that the USPS deliberately intimidated, forced and misled me into submitting my resignation rather than informing me of my legal rights or attempting to determine an appropriate accommodation.

(Aff. of Thomas R. Burdette, Jr. ¶ 4).

Inasmuch as these and other factual uncertainties and disputes persist, summary disposition is inappropriate at this time.

Moreover, defendant confronts an additional, procedural obstacle as a result of the conversion of his motion to one seeking summary judgment:

> Generally speaking, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." . . . If a party believes that more discovery is necessary for it to demonstrate a genuine issue of material fact, the proper course is to file a Rule 56(f) affidavit stating "that it could not properly oppose a motion for summary judgment without a chance to conduct discovery."

Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002)(citations omitted).

12

On September 21, 2005, Burdette's counsel filed a Rule 56(f) affidavit providing pertinently as follows:

> [A]s this case is still in its infancy, plaintiff has not yet had the opportunity to take depositions and/or to otherwise conduct discovery to obtain information that may be vital to its opposition to defendant's motion.  Specifically, plaintiff has meritorious defenses to defendant's motions including, but not limited to, (1) whether the required notice was posted, (2) whether the notice if posted was in a conspicuous place, (3) whether the notice contained such information required by law and/or regulation, and (4) even if posted, whether under the totality of the circumstances in this case, such notices were reasonably geared to give Mr. Burdette notice of his right to seek EEO counseling and of the 45 day deadline in which to do so.
>
> Moreover, the plaintiff has raised other grounds upon which discovery is necessary, including discovery into facts relating to equitable estoppel, equitable tolling and the continuing violation theory.
>
> The plaintiff further anticipates . . . taking depositions . . . important to examining the credibility of the witnesses by confronting certain witnesses with documentation which appear to contradict certain of the answers asserted by the defendant in response to the complaint . . . .

(Aff. of Keith Jones ¶¶ 5-7).

The court notes defendant's dispositive motion was filed early in the case.  At the time the motion was filed, discovery was not set to conclude until February 16, 2006.  The deadline was later extended, at the parties request, to April 16, 2006.  This remaining discovery is thus a separate, additional reason counseling in favor of denying summary disposition.

13

The court, accordingly, ORDERS that the defendant's motion for summary judgment be, and it hereby is, denied without prejudice.  Defendant, if he so desires, may include his present arguments in a dispositive motion filed at the conclusion of the discovery period.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED:  February 3, 2006

John T. Copenhaver, Jr.
United States District Judge

14